UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | } | |
| | } | |
| GWENETH DOUGLASS POWERS, | } | Case No. 15-03267-JJR13 |
| | } | |
| Debtor. | } | |

**OPINION AND ORDER GRANTING MOTION FOR RELIEF
FROM CO-DEBTOR STAY UNDER SECTION 1301(c)(2)**

A. Introduction and History

Gweneth Douglass Powers ("Gweneth") filed this chapter 13 case on August 17, 2015. Since its inception, there have been at least 370 entries in the CM/ECF docketing system for this case, not including entries made in the two adversary proceedings (AP Nos. 15-00135, 16-70006) she filed against two judges, or the entries made with the district court in an appeal. Gweneth and her husband, Anthony D. Powers ("Anthony" and jointly with Gweneth, the "Powers") have filed a total of thirteen bankruptcy cases: Gweneth has filed seven and Anthony six. Although they are husband and wife, all their cases were filed individually, never jointly.[1] Gweneth received discharges in three of her cases, three were dismissed within a few months after they were filed, and the instant case is pending. Anthony's cases were all dismissed or closed without a discharge. In her first two cases, Gweneth was represented by a lawyer, but in her last five cases, including

---

[1] The Powers are bankruptcy-savvy. By filing separately, a debtor-spouse gets the benefit of the stay imposed by § 362(a) of the Bankruptcy Code, and the non-filing spouse benefits from the co-debtor stay imposed by § 1301(a) for jointly owed debts, without himself becoming a debtor in the chapter 13 case. Nonetheless, often the Powers' separate cases were pending at the same times. (Doc. 246, Appendix A.)

1

this one, she proceeded pro se; Anthony's cases were all pro se. If the Powers were lawyers, they could be accurately described as accomplished bankruptcy pettifoggers.[2]

After filing her original chapter 13 plan in the instant case on August 31, 2015, the Debtor filed four amended plans, with none achieving confirmation. She voluntarily converted her case to chapter 7 on November 30, 2015, but thereafter it was converted back to chapter 13. Following her return to chapter 13, she filed two additional amended plans, with the last being confirmed on May 2, 2016, almost nine months after the case was filed. Following confirmation, the plan was twice modified. Before confirmation, some of Gweneth's proposed plans provided for payments on the Powers' home mortgage held by Chadwell Homes of Alabama, LLC ("Chadwell"). Notably, that mortgage, which provided the Powers with the funds to purchase their home, closed on October 2, 2009. However, since closing almost nine years ago, the Powers have paid Chadwell only $400. Gweneth's confirmed plan in this case made no provision for payment of the mortgage and neither did either of the post-confirmation modifications. Through a series of bankruptcy filings, the Powers have successfully stymied Chadwell's attempts to foreclose, while continuing to live in the mortgaged property without paying anything on the mortgage.

The following matters are now before the court for a ruling:

1. Chadwell's Motion for Relief from Stay Against Co-Debtor Under Section 1301(c)(2) (Doc. 319);

2. Co-Debtor's Response to Motion for Relief From Stay Against Co-Debtor, etc. (Doc. 324);

3. Co-Debtor's Objection to Chadwell's Fact Summary Sheet (Doc. 327), as supplemented at Doc. 336;

4. Co-Debtor's Objection to Chadwell's Motion for Relief from Stay (Doc. 341);

---

[2] "1: a lawyer whose methods are petty, underhanded, or disreputable: shyster. 2: one given to quibbling over trifles." https://www.merriam-webster.com/dictionary/pettifogger (last visited Aug. 28, 2018).

2

5. Debtor's and Co-Debtor's Objection to Chadwell's Motion for Relief (Doc. 358);

6. Debtor's and Co-Debtor's Objection to Chadwell's Fact Summary Sheet (Doc. 360);

7. Motion for Recusal (Doc. 357); and

8. Objection to the Court's Refusal to Place the Motion for Recusal on the Docket (Doc. 367).[3]

B. Additional Background

As mentioned, during the pendency of this case, Gweneth filed two adversary proceedings, each naming as a defendant the bankruptcy judge then assigned to her case—AP No. 15-00135 against the Honorable Tamara O. Mitchell, and AP No. 16-70006 against the Honorable Jennifer H. Henderson. Both adversary proceedings were ultimately dismissed. The adversary proceeding filed against Judge Henderson was dismissed pursuant to an order entered March 23, 2016 (AP Doc. 12; the "March 23, 2016 Order"), which found the adversary proceeding had been filed in bad faith and imposed sanctions. A portion of the March 23, 2016 Order stated the following:

> (3) Following the dismissal, closing, or other termination of [Gweneth's] pending bankruptcy case (Case No. 15-03267-JHH), she shall not be eligible to again file for relief under any chapter of the U.S. Bankruptcy Code, 11 U.S.C. § 101, et seq., until after (i) one year from the date of this Order or (ii) payment in full of the penalty, with interest if applicable, imposed under paragraph (1) above, whichever is last to occur.
>
> (4) In any subsequent bankruptcy case filed by [Gweneth], regardless of when filed, the automatic stay and codebtor stay otherwise imposed with respect to [Gweneth] and any codebtor, and their property, under 11 U.S.C. §§ 362(a), 1201, and 1301 shall NOT go into effect with respect to or in connection with Chadwell Homes of Alabama, LLC's mortgage recorded in the Office of the Judge of Probate of Jefferson County, Alabama at BK LR200910 page 8008 encumbering the real property described therein as Lot 5, Block 4, according to the Survey of Huntcliff, as recorded in Map Book 110, Page 30, in said probate office.

---

[3] Items 1 through 6 were set for a hearing on August 21, 2018. However, the court did not believe a hearing would assist it in reaching a decision with respect to item 7—the Motion for Recusal. Nonetheless, during the August 21st hearing, at the Powers' request, the court allowed them to argue their grounds for recusal. Thus item 8—their objection to the Motion for Recusal not being set for hearing—is moot.

Notably, the March 23, 2016 Order applied only to Gweneth and did not apply to Anthony; that distinction is addressed in this Opinion and Order.

The instant case and its two judge-defendant adversary proceedings are only the Powers' most recent bankruptcy endeavors. As mentioned, the Powers have filed thirteen bankruptcy cases, and otherwise have a lengthy and disconcerting history of filing serial bankruptcy cases. This court critiqued the Powers' bankruptcy escapades in an opinion issued on April 15, 2016 (the "2016 Opinion"). The 2016 Opinion was entered in both the instant case (Doc. 246) and in Case No. 15-05058-JJR13 filed by Anthony (Doc. 113), as well as in the Adversary Proceeding filed by Gweneth against Judge Henderson (AP 16-70006-JJR; AP Doc. 15).

Although the 2016 Opinion, the March 23, 2016 Order, the transcripts of hearings held in the Powers' most recent cases, and the CM/ECF docket entries for those cases should be read for the complete story, the following excerpts from the 2016 Opinion highlight the court's findings that the Powers have wrongfully manipulated the bankruptcy process and are guilty of bad faith:

> The [Powers], although proceeding *pro se* are masters at manipulating bankruptcy jurisprudence to their advantage and have demonstrated an uncanny ability to surround their cases with a constant air of confusion and contrived complexity to promote delay. The three matters being considered in this Opinion are further examples of the [Powers'] dilatory tactics. (2016 Opinion, pp. 3, 4.)

> Ordinarily the court would grant *pro se* debtors a substantial margin of error and give them the benefit of the doubt. Not so with [the Powers]. Through the years they have unfairly maneuvered the bankruptcy judicial process to their advantage while paying only paltry sums to creditors. Through their serial filings they have lived off the automatic stay: They have paid [Chadwell] the holder of their purchase-money home mortgage only $400 since the mortgage was closed in 2009, and paid so little on their purchase-money automobile loan that the car is now worth less than half the secured claim. Unpaid taxes total over $88,000. All you have to do is read their *pro se* drafted pleadings to realize these are not honest-but-unfortunate debtors who are fumbling through the bankruptcy process seeking legitimate debt relief, but are too poor to hire a lawyer. The truth is that because they are *pro se*, they realize they can get away with what otherwise would put a lawyer's license in jeopardy – filing frivolous lawsuits against judges. (2016 Opinion, p. 4 n. 1.)

> At hearings held on March 22, 2016, the court found and concluded on the record that the [Powers] had not acted in good faith in their most recent cases and had unfairly gamed the bankruptcy process to their advantage and to the detriment of their creditors. (2016 Opinion, p. 5.)
>
> Because the denial of confirmation and dismissal of Anthony's case were premised upon findings and conclusions related to deficiencies in the proposed plan and a history showing bad faith manipulation of the bankruptcy system, the court finds there is little if any likelihood of success on the merits. (2016 Opinion, p. 6.)

    C. <u>Motion for Recusal</u>

As shown by Gweneth's adversary proceedings filed against the judges assigned to her case, the Powers have a propensity to accuse judges of improper motives and to request recusal when they receive an unfavorable ruling or, as with the undersigned judge, they perceive an adverse ruling may be in the offing. Their efforts have successfully delayed Chadwell and have allowed them to continue living in their house for almost nine years without making mortgage payments. Now, anticipating an unfavorable ruling from this judge, they have accused him of assorted misdeeds and prejudice, including being complicit with an unknown county prosecutor and crime victim who, according to the Powers, wrongfully had them prosecuted and incarcerated years ago. Such allegations are bizarre, and in most situations would be considered irrational, but the allegations are actually quite calculated and devious, and seek to further delay Chadwell with no regard for the truth.

Additionally, the Powers' racially charged accusations in their recusal motion are unsupported by a single fact other than their disagreement with this judge's rulings. The Powers make the naked accusation that because the individual who apparently owns Chadwell is white and they are black, the court must be motivated by race in ruling against them and finding they continue to abuse the bankruptcy process.

Section 455 of Title 28 of the United States Code governs disqualification of a bankruptcy judge, and provides in part:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . .

28 U.S.C. § 455(a) and (b)(1).[4]

The court finds that the recusal motion was filed for the improper purpose of judge shopping and delay; contains illogical and unsupportable speculation with absurd and unsubstantiated allegations of collusion and discrimination, which have no basis in law or fact; and merits no detailed rebuttal or waste of judicial resources. The motion for recusal, and the bizarre collusion argument and unfounded claim of racial prejudice, are attempts to embark on another judge-shopping spree and buy additional time to enjoy mortgage-free living at the expense of Chadwell.

The other matters raised in the recusal motion (including the attack on the constitutionality of Judge Henderson's § 362(d) order and the unsupportable argument that the Powers, who have managed to accrue hours upon hours of court time in front of three bankruptcy judges and one district judge, have somehow been denied an opportunity to be heard on the stay relief matters) were addressed and rejected by the district court on appeal. (Doc. 326.)

---

[4] Another judge of this court recently examined the standards for disqualification. *Johnson v. U.S. Dept. of Ed. (In re Johnson)*, 2018 WL 2670469, *10-*14 (Bankr. N.D. Ala. May 23, 2018). Judge Crawford thoroughly explained the disqualification standard, and the impropriety of using the recusal procedure to judge shop.

Accordingly, it is ORDERED that the Motion to Recuse (Doc. 357) is DENIED, and as mentioned in note 3, s*upra*, the objection at Doc. 367 is moot.

D. § 1301(c)(2) Co-Debtor Stay Relief

When a debtor files a petition for chapter 13 bankruptcy relief, section 1301(a) of the Bankruptcy Code imposes a stay from debt collection efforts by a creditor[5] against an individual who is personally liable as a co-obligor with the principal debtor on a consumer debt, or who has secured such a debt. Anthony is a co-mortgagor with Gweneth on Chadwell's mortgage. Thus, when Gweneth filed the instant case, the § 1301(a) co-debtor stay went into effect with respect to Anthony's obligations under Chadwell's mortgage and Anthony's interest in the mortgaged property. On March 1, 2016, the court entered an order (Doc. 178) granting Chadwell's motion for stay relief with respect to Gweneth's interest in the mortgaged property. The district court affirmed that order on appeal (Doc. 326). Shortly after the district court's order, Chadwell moved for relief from the co-debtor stay under § 1301(c)(2) with respect to Anthony.

---

[5] The Powers argue that because Gweneth received a discharge in a chapter 7 case after she executed the Chadwell mortgage (Case No. 11-03610-TBB7 filed July 20, 2011; discharged June 5, 2012) the discharge of her personal liability for the debt owing to Chadwell means that Chadwell is no longer a "creditor." Thus, they argue, the § 1301 stay should not be lifted. This argument overlooks the outcome in *Johnson v. Home State Bank*, 501 U.S. 78 (1991), in which the Supreme Court explicitly held that a mortgage that survived a chapter 7 discharge of personal liability was nonetheless a "claim" that could be dealt with in a chapter 13 plan. The district court cited *Johnson* in its order at Doc. 326, and explained that Chadwell's in rem rights remain despite a personal discharge. The Powers are now attempting to utilize the discharge in a novel statute-parsing approach that shows their level of sophistication at crafting unique, albeit flawed legal arguments. As a holder of the mortgage claim against Gweneth's property, Chadwell is a "creditor" in Gweneth's chapter 13 case notwithstanding that her personal liability was discharged. *See also Basson v. Fed. Nat'l Mort. Ass. (In re Basson)*, 713 Fed. Appx. 987 (11th Cir. 2018) (per curiam) (entity that alleged it held a note secured by a mortgage, and alleged default under the contract, had standing to seek stay relief against the debtor's property). Nonetheless, if one accepts the Powers' argument that Chadwell is not a creditor in Gweneth's case, then the § 1301(a) stay, which only applies to a creditor attempting "to collect . . . a consumer debt of the debtor . . . ." never went into effect, and Chadwell needs no co-debtor stay relief to proceed with enforcing its mortgage.

Section 1301(c)(2) of the Code is dispositive of Chadwell's motion seeking relief from the co-debtor stay. That Code section states, "On request of a party in interest and after notice and a hearing, the court *shall* grant relief from the stay provided by subsection (a) of this section with respect to a creditor, to the extent that . . . the plan filed by the debtor proposes not to pay such claim . . . ." Code § 1301(c)(2) (emphasis added). Gweneth's chapter 13 plan (Doc. 241), confirmed on May 2, 2016 (Doc. 256), does not provide for payment of Chadwell's claim.[6] The plan proposed to pay taxes, a claim secured by furniture, an automobile lease that Gweneth proposed to pay direct, and unsecured creditors, but not Chadwell.

The Powers filed objections (Docs. 327, 336, 360) to Chadwell's fact summary sheet (Doc. 322).[7] Those objections are diversionary tactics and are irrelevant to the court's consideration of the law and facts that mandate the lifting of the co-debtor stay in this case. The Powers received the fact summary sheet several weeks before the final hearing on Chadwell's motion, and nothing in the fact summary nor the Powers' objections alters the fact that Chadwell's mortgage debt is not provided for in Gweneth's confirmed chapter 13 plan.

---

[6] Likewise, neither of the two modifications to the confirmed plan provide for any payment to Chadwell. (Docs. 300, 311.)

[7] Local Rule 4001-1(c) requires secured creditors who file a motion seeking stay relief, including co-debtor stay relief, to file a fact summary sheet at least 14 days before the hearing on the motion. The form for the fact summary sheet is on the court's website—Form Number LR 4001-1(c)(12/15). The information required to complete the fact summary sheet includes basic information about the creditor's claim, such as the payoff amount, pre- and post-petition delinquencies, and the property address. The Local Rule requires the fact summary sheet to be served electronically via CM/ECF, which Chadwell did. Nonetheless, because the Powers are pro se, the court continued the initial setting for the hearing on Chadwell's § 1301 stay relief motion and instructed Chadwell to serve the Powers via first class mail. Chadwell filed a certificate of service confirming compliance with the court's instructions. Chadwell's fact summary sheet was in substantial compliance with the applicable Local Rule and prescribed Form.

Anthony, individually and jointly with Gweneth, filed a response and objections (Docs. 324, 336, 341, 358) to Chadwell's motion seeking § 1301 stay relief. They ask this court to reverse a previous order (Doc. 178) granting § 362(d) stay relief with respect to Gweneth, which was affirmed by the district court. The Powers claim that the property they mortgaged to Chadwell was not purchased from Chadwell, but instead was purchased from Vincent Bradley, whom the Powers now claim is a fictitious entity. They also assert the court was complicit in what they allege was fraud based on its 2016 Opinion. The identity of the person or entity who sold the Powers their home that is mortgaged to Chadwell was not relevant to the previous stay relief granted pursuant to § 362(d) with respect to Gweneth's interest in the mortgaged property, and it is likewise not relevant to the relief sought by Chadwell under § 1301(c)(2) with respect to Anthony's interest. The court will not chase that red herring.[8]

---

[8] Chadwell holds a mortgage encumbering the Powers' home; that fact is not disputed, although the Powers argue that the mortgage is defective because their own title is defective. In other words, the Powers resort to slandering their own title in an attempt to defeat Chadwell's mortgage—a "cutting off your nose to spite your face" argument. Nonetheless, the court referred to Chadwell's mortgage as a purchase-money mortgage at page 4 of its 2016 Opinion. The court also stated that the Powers purchased the home from Chadwell, although the evidence presented in another hearing a few weeks earlier, before another judge of this court, appeared to show that the seller was actually Chadwell's business partner, Vincent Bradley, and the district court so stated in its recent order (Doc. 326). This court's statement regarding the identity of the seller of the mortgaged property was dicta, and had no bearing on this or any other order entered in this case or any of Anthony's cases, and was, in any event, not intended as a binding pronouncement of the status of the property's chain of title. There is no dispute that the purchase of the property was financed by Chadwell, regardless of who actually sold it to the Powers, thus qualifying Chadwell as a purchase-money mortgagee. Contrary to the Powers' argument, the mortgage given to a lender who provides money for the borrower to purchase property from a vendor who is not a mortgagee is considered a purchase-money mortgage under Alabama law. See *Martin v. First Nat. Bank of Opelika*, 279 Ala. 303, 307, 184 So. 2d 815, 818–19 (1966):

> The appellant insists that a purchase-money mortgage can only be given to a vendor as a substitute for his vendor's lien and therefore a mortgage given to a third party, who advances the purchase price to the vendee, cannot be a purchase-money mortgage as the third party has no vendor's lien for which a mortgage can be substituted. The fact that a mortgage is made to a person other than the vendor does not alone prevent its being a purchase-money mortgage. A mortgage on land

Accordingly, it is ORDERED that Chadwell's Motion for Relief from Stay Against Co-Debtor Under Section 1301(c)(2) (Doc. 319) is GRANTED, and the Power's objections thereto (Docs. 324, 336, 341, 358) are OVERRULED.

E. <u>Stay Relief in Future Cases Filed by Anthony</u>

The stay under Code § 362(a) was terminated as to Chadwell's mortgage in an order (Doc. 178) entered March 1, 2016 with respect to Gweneth's interest in the mortgaged property, and the § 1301(a) co-debtor stay with respect to Anthony's interest has now been terminated pursuant to this Opinion and Order. Thus, there is presently no automatic stay of any variety in effect as to Chadwell's mortgage, and Chadwell is free to foreclose its mortgage and otherwise exercise its

---

executed to secure the purchase money by a purchaser of the land executed contemporaneously with the acquisition of the legal title thereto, or afterward, but as a part of the same transaction, is a purchase-money mortgage.

The Powers' claims that the undersigned judge committed fraud by misstating the seller's identity (which identity had no bearing on the outcome of the issues before the court) or by knowing that the seller "does not exist" are absurd and merit no further response.

To the extent it may have significance, perhaps in another forum, the court has the ability to correct the 2016 Opinion's statement regarding the seller's identity under Rule 60 of the Fed. R. Civ. P., applicable to bankruptcy matters by virtue of Fed. R. Bankr. P. 9024, which provides: "The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice." Accordingly, the court sua sponte corrects its statement in the 2016 Opinion to clarify that the property was purchased from someone, and the court need not determine the identity of the seller because it was, and remains, irrelevant to the issues before this court. Regardless of the seller's identity or how the deed was executed, it is undisputed that Chadwell provided purchase money financing for the purchase of the home, as the district court noted on appeal. The Powers initially argued that their deed was void (thus attempting to void the mortgage and their title) by arguing that it was executed on behalf of the seller by an attorney-in-fact who printed rather than signed the seller's name and the attorney in fact's name to the deed. On appeal, the district court rejected that argument under Alabama law. The Powers have now regrouped. Their current attempt to do an end-run around the district court's decision that affirmed the § 362(d) stay relief order is to argue that the deed was a "fraud" based on this court's statement in its 2016 Opinion that Chadwell (rather than Bradley) was the seller. This argument is meritless on both the facts and the law, and the district court attempted to show the Powers that their repeated attempts at invalidating their own deed, even if successful, would not necessarily nullify Chadwell's mortgage. (Doc. 326, p. 23 n.9).

state law and contractual remedies with respect to the mortgaged property.[9]  However, based on their history of abusive filings in this court, the Powers will, in all likelihood, not go quietly and concede when Chadwell begins to exercise its remedies. The 2016 Opinion noted the tag-team bankruptcy filings the Powers utilized with tremendous success in avoiding foreclosure. Anthony's bad faith, serial bankruptcy filings and abuse of the bankruptcy process (in complicity with Gweneth) demonstrate that in all probability, he and Gweneth will continue their efforts to wrongfully interfere with Chadwell's legitimate rights and remedies with respect to the mortgaged property unless the court acts to forestall such abuse.

As mentioned above, the March 23, 2016 Order provided that with respect to Gweneth's interest in the property mortgaged to Chadwell, the automatic stay under any chapter of the Code would not go into effect in any future case she might file.  But that restriction applied only to Gweneth, not Anthony.  Now that the § 1301 co-debtor stay is being terminated under this Opinion and Order, the court has concerns that the pattern of abusive filings and delay, rather than financial rehabilitation, will continue and that Anthony, who is not currently a debtor in any pending case, will file yet another case to further frustrate Chadwell.[10]  Chadwell's motion seeking relief from

---

[9] Those remedies include, without limitation, foreclosure, ejectment, and other post-foreclosure actions to gain possession of the mortgaged property, without further order from this court.

[10] Anthony filed a chapter 13 case on December 8, 2014 (Case No. 14-04766), which he converted to chapter 7 on May 18, 2015, but the case was closed without a discharge because he failed to file a certificate confirming his compliance with Code § 727(a)(11)—a simple and inexpensive task.  In light of Anthony's demonstrated understanding of the Bankruptcy Code, his failure to comply with § 727(a)(11) cannot be considered an oversight. The court twice notified Anthony that he must file a certificate confirming his compliance with § 727(a)(11), the last also warning that failure to so comply would result in his case being closed without a discharge. (Docs 108, 114 in Case No. 14-04766.)  It is obvious that Anthony's non-compliance was intentional; he purposely avoided the entry of a discharge, so he would remain eligible to file another case without the temporal limitations imposed by § 727(a)(8) and (a)(9). (See 2016 Opinion, p.8.)  Indeed, on December 15, 2015, less than three months after his converted chapter 7 case was closed without

the co-debtor stay (Doc. 319) concluded: "Movant further prays that it have such other and further relief, at law or in equity, to which it may show it to be justly entitled." In light of the Powers' history in the bankruptcy arena, and to prevent their further abuse, this court finds that Chadwell is entitled to permanent and continuing stay relief with respect to Anthony's interest in the mortgaged property to the same extent as was imposed under the March 23, 2016 Order with respect to Gweneth's interest.

Accordingly, it is ORDERED that in any bankruptcy case hereafter filed by Anthony D. Powers, regardless of when filed, the automatic stay and co-debtor stay otherwise imposed with respect to Anthony D. Powers and any co-debtor, and their property, under 11 U.S.C. §§ 362(a), 1201(a), and 1301(a) shall NOT go into effect with respect to or in connection with Chadwell Homes of Alabama, LLC's mortgage recorded in the Office of the Judge of Probate of Jefferson County, Alabama at BK LR200910 page 8008 encumbering the real property described therein as Lot 5, Block 4, according to the Survey of Huntcliff, as recorded in Map Book 110, Page 30, in said probate office.[11]

F. Rule 4001(a)(3) 14-Day Stay Not Applicable

In its motion seeking § 1301 co-debtor relief, Chadwell asked that "Rule 4001(a)(3) not be applicable in this case due to the lack of adequate protection." (Doc. 319). Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure provides that "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." There is no good reason to

---

a discharge, Anthony filed another chapter 13 case (Case No. 15-05058), which was nonetheless dismissed in less than three months.

[11] Such "further relief" is also granted pursuant to Code § 105(a) "to prevent an abuse of process" which will occur should the Powers be allowed to continue with their abuse of the bankruptcy process and in particular abusing Chadwell.

stay this Opinion and Order, and in fact there is good reason to allow this Opinion and Order to go into effect immediately upon its entry. Chadwell has been wrongfully deprived of its legitimate rights and remedies as a creditor, and further delay, even 14 days, is not justified. Additionally, more time, even 14 days, would simply allow the Powers to concoct some scheme to further delay Chadwell and perpetuate their mortgage-payment-free occupancy of the mortgaged property.

Accordingly, it is ORDERED that the 14-day stay otherwise provided by Rule 4001(a)(3) shall NOT go into effect, and this Opinion and Order shall be enforceable immediately upon its entry.

So done and ordered this 28th day of August 2018.

/s/ James J. Robinson
JAMES J. ROBINSON
CHIEF UNITED STATES BANKRUPTCY JUDGE